UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

YVONNE BROWN,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. C08-5716KLS

AMENDED[1] ORDER GRANTING IN PART MOTION FOR AN AWARD OF ATTORNEY'S FEES PURSUANT TO 42 U.S.C. §406(b)

This matter is before the Court on a motion for an award of attorney's fees pursuant to 42 U.S.C. §406(b) filed by plaintiff's attorney. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13. After reviewing the motion, defendant's response thereto, the reply to that response filed by plaintiff's attorney, and the remaining record, the undersigned hereby finds and orders as follows.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff, acting *pro se* at the time, filed an application for disability insurance benefits on November 13, 2002, alleging she became disabled as of December 31, 1994. (Dkt. #27, p. 1).

---

[1] This amended order, which replaces and supersedes the original order issued on February 19, 2010 (Dkt. #1), is being issued solely to correct a clerical error in footnote 6 of that original order. Specifically, footnote 6 in the original order states that plaintiff had asserted an additional basis for seeking a reduction in the attorney's fees being requested by plaintiff's counsel pursuant to the requirements set forth in 20 C.F.R. § 404.1703. Instead, it was defendant who had asserted that additional basis. Accordingly, footnote 6, which is now footnote 7 in this amended order, has been edited to correct that error. No other changes have been made to findings and conclusions contained the original order.

ORDER - 1

On February 6, 2004, plaintiff entered into a written contingent fee agreement with plaintiff's attorney, in which she agreed to pay plaintiff's attorney 25% of any past due disability benefits she received if her application was "approved at the Appeals Council or higher level," including on appeal to federal court. (Id., Exhibit 1).

Plaintiff's application was denied at the initial administrative review level on July 9, 2003, and upon reconsideration on September 29, 2003. (Id. at p. 2). An administrative hearing was held on December 13, 2005, and an unfavorable decision was issued on September 11, 2006. (Id.). On September 16, 2008, the Appeals Council denied plaintiff's request for review of that decision. (Id.). On November 26, 2008, plaintiff filed a complaint with this court appealing the Commissioner's unfavorable decision. (Dkt. #1-#3).

On May 20, 2009, after plaintiff filed her opening brief, but before the submission of any further briefing in this matter, the Court approved a stipulated motion for remand ordering that the case be remanded to the Commissioner for further administrative proceedings. (Dkt. #21-#22). On August 18, 2009, the Court also approved a stipulated motion for attorney's fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, *et seq.*, awarding plaintiff attorney's fees in the amount of $1,976.32 and expenses in the amount of $17.80, for a total payment of $1,994.12, based on a total of 11.55 hours of work spent by plaintiff's attorney before the Court on plaintiff's behalf. (Dkt. #23-#25).

On remand, a new administrative hearing was held on September 18, 2009. (Dkt. #27, p. 2). On October 6, 2009, an administrative law judge ("ALJ") issued a fully favorable decision, in which plaintiff was found to be disabled as of her amended onset date of disability of August 28, 1999. (Id., Exhibit 2). The ALJ also approved the contingent fee agreement entered into between plaintiff and plaintiff's attorney, subject to the condition that plaintiff's claim result in

ORDER - 2

an award of past due benefits. (Id., Exhibit 3). On December 22, 2009, the Commissioner awarded plaintiff past due benefits in the amount of $63,068.00, withholding an amount equal to 25% of that award ($15,767.00) for payment of attorney's fees. (Id. at p. 2, Exhibit 4).

DISCUSSION

Section 406(b) of the Social Security Act (the "Act") "controls fees for representation in the federal courts." Hearn v. Barnhart, 262 F.Supp.2d 1033, 1035 (N.D.Cal. 2003). That section provides in relevant part:

> Whenever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total past-due benefits to which the claimant is entitled by reason of such judgment.

Id. (quoting 42 U.S.C. § 406(b)(1)(A). Attorney's fees awarded are to be paid "out of, and not in addition to, the amount of [the] past-due benefits" the claimant receives, and are payable for work the claimant's attorney performed "before the district court." Id. An award made pursuant to section 406(b) is "the only way a successful . . . attorney may recover fees" under the Act "for work performed before the district court." Crawford v. Astrue, 586 F.3d 1142, 1147 (9th Cir. 2009); Clark v. Astrue, 529 F.3d 1211, 1215 (9th Cir. 2008) (section 406(b) empowers courts to award fees based only on representation before district court).

District courts, however, lack "jurisdiction to award attorney's fees for administrative work." Brown v. Barnhart, 270 F.Supp.2d 769, 771 (W.D.Va. 2003); Clark, 529 F.3d at 1214 (district court has no authority to award fees for representation of claimant in proceedings before Commissioner). Rather, fees for such work at the administrative level are governed by section 406(a) of the Act, which allocates to the Commissioner the power to determine them. Gisbrecht v. Barnhart, 535 U.S. 789, 793 (2002); Brown, 270 F.Supp.2d at 771 ("[O]nly the agency has the

ORDER - 3

power to make such an award."); see also Clark, 529 F.3d at 1214. The claimant's attorney thus must petition the Commissioner, not the district court, for those fees, which "may not exceed the lesser of 25% of past-due benefits or $5,300."[2] Crawford, 586 F.3d at 1147 n.6 (citing 42 U.S.C. § 406(b)(1)(A)(ii), (iii); Gisbrecht, 535 U.S. at 795).

"Because benefits amounts figuring in the [section 406(b)] fee calculation are limited to those past due, attorneys may not gain additional fees based on" their "claimant's continuing entitlement to benefits." Gisbrecht, 535 U.S. at 795. In addition, "[t]he prescriptions set out in §§ 406(a) and 406(b) establish the exclusive regime for obtaining" attorney's fees under the Act, and "[c]ollecting or even demanding from the client anything more than the authorized allocation of past-due benefits is a criminal offense." Id. at 795-96 (citing §§ 406(a)(5), (b)(2) (1994 ed.); 20 C.F.R. §§ 404.1740-1799 (2001)). Congress, furthermore, has "harmonized fees payable by the Government under [the] EAJA with fees payable under § 406(b) out of the claimant's past-due . . . benefits," by allowing awards to "be made under both prescriptions, but the claimant's attorney must 'refun[d] to the claimant the amount of the smaller fee.'"[3] Id. at 796 (quoting Act of Aug. 5, 1985, Pub.L. 99-80, § 3, 99 Stat. 186).

As noted by the Ninth Circuit, attorneys representing Social Security disability claimants "routinely enter into contingent-fee agreements specifying that the fee will be 25% of any past-due benefits recovered," thereby "providing the attorney the statutory maximum of fees if the

---

[2] Of note, in the Ninth Circuit "[t]he 25% cap on attorneys' fees in § 406(b) limits only the amount of attorneys' fees awarded for representation before the district court," and "does not limit the combined fees awarded under § 406(a) for representation before the SSA [Social Security Administration] and under § 406(b) for representation before the district court." Crawford, 586 F.3d at 1147 n.6. However, this appears to not be the case in at least one other circuit. See Brown, 270 F.Supp.2d at 771 (stating that to avoid double recovery under §§ 406(a) and (b), district court must consider any amount Commissioner awards and ensure that both awards in combination do not exceed 25% of past due benefits) (citing Morris v. Social Security Administration, 689 F.2d 495 (4th Cir. 1982)).

[3] Accordingly, an award made pursuant to the EAJA will offset "an award under Section 406(b), so that the [amount of the total past-due benefits the claimant actually receives] will be increased by the . . . EAJA award up to the point the claimant receives 100 percent of the past-due benefits." Id. at 796 (citation omitted).

ORDER - 4

representation is successful." Crawford, 586 F.3d at 1147. Indeed, the Supreme Court has noted expressly that "§ 406(b)'s language does not exclude contingent-fee contracts that produce fees no higher than the 25 percent ceiling." Gisbrecht, 535 U.S. at 800, 807 ("Most plausibly read, we conclude, § 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court."). "Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." Id.; Ellick v. Barnhart, 445 F.Supp.2d 1166, 1167 (C.D.Cal. 2006) ("The Court has an independent duty to ensure that a section 406(b) contingency fee is reasonable.").

As such, the only "boundary line" on contingent fee agreements is that they will be found to be "unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits." Gisbrecht, 535 U.S. at 807. "Within the 25 percent boundary," however, attorneys for successful claimants "must show that the fee sought is reasonable for the services rendered." Id. While section 406(b) does not further specify how to determine the reasonableness of a requested fee, the Supreme Court has held that "a district court charged with determining a reasonable fee award" must, as just indicated, "respect 'the primacy'" of a lawful attorney-client contingent fee agreement, by "looking first to the" the agreement itself, and "then testing it for reasonableness." Crawford, 586 F.3d at 1148 (quoting Gisbrecht, 535 U.S. at 793, 808).

A district court may appropriately reduce an "attorney's recovery based on the character of the representation." Gisbrecht, 535 U.S. at 808. Thus, "if the attorney provided substandard representation or engaged in dilatory conduct in order to increase the accrued amount of past-due benefits," the fee resulting from the contingent fee agreement will be found to be unreasonable. Crawford, 586 F,3d at 1148. "If the attorney is responsible for delay, for example, a reduction is

ORDER - 5

in order so that the attorney will not profit from accumulation of benefits during the pendency of the case in court." Gisbrecht, 535 U.S. at 808.

In addition, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order." Id. In this regard, the district court – "as an aid to" its "assessment of the reasonableness of the fee yielded by the fee agreement," but "not as a basis for satellite litigation" – may "require the claimant's attorney to submit . . . a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." Id. It is the attorney, though, who "bears the burden of establishing that the fee sought is reasonable." Crawford, 586 F.3d at 1148.

Accordingly, as one district court has observed, it appears the Supreme Court intends for the lower courts to give contingent fee agreements "great deference," and to uphold them "unless the fees produced by them are found to be unreasonable" as noted above. Mizell v. Astrue, 2008 WL 536168 *5 (S.D.Ala. 2008); Hearn, 262 F.Supp.2d at 1037 (noting that since Gisbrecht was handed down, district courts generally have been deferential to contingent fee contract terms in section 406(b) cases). While, as another district court has observed, courts applying Gisbrecht "have not been uniform in their approach," several factors in addition to those discussed above, generally have entered the equation. Ellick, 445 F.Supp.2d at 1172.

First, of course, is whether counsel has "achieved a favorable result" for the claimant. Id.; Brown, 270 F.Supp.2d at 772 (finding, as support for award of substantial attorney's fee under section 406(b), that there was no doubt counsel achieved large measure of success for his client). For this purpose, not only is it proper to consider the amount of past due benefits received, but also any "ongoing benefits" that may have been awarded. Claypool v. Barnhart, 294 F.Supp.2d 829, 833 (S.D.W.Va. 2003). If a successful result is achieved, counsel "should be compensated

ORDER - 6

above" his or her "normal hourly fees to recognize the risk of contingent litigation." Ellick, 445 F.Supp.2d at 1172; Hearn, 262 F.Supp.2d at 1037 ("Congress has indicated the permissibility, within limits, of rewarding attorneys for assuming the risk of going uncompensated for representing Social Security claimants.") (quoting Dodson v. Commissioner of Social Security, 2002 WL 31927589 *2 (W.D.Wa. 2002)).

Indeed, the courts generally have accepted "that the resulting *de facto* hourly rates may exceed those for non contingency-fee arrangements." Hearn, 262 F.Supp.2d at 1037. Further, "any reliance on a non-contingent rate without taking into account the contingent nature of" the fee arrangement "could undercompensate" claimants' counsel, as they "may only collect [section 406(b)] fees from" claimants "who ultimately receive benefits." Id. In adding section 406(b) to the Act, Congress also "was mindful that fee awards should be sufficient to encourage adequate representation of claimants." Crawford, 586 F.3d at 1149 (citing Gisbrecht, 535 U.S. at 804, 806); Wells v. Sullivan, 907 F.2d 367, 370 (2nd Cir. 1990) (noting contingent fee agreements effectuate Congressional objective of securing adequate representation for Social Security claimants).

"[B]asing a reasonableness determination on a simple hourly rate basis is inappropriate," therefore, "when an attorney is working pursuant to a reasonable contingency contract for which there runs a substantial risk of loss." Hearn, 262 F.Supp.2d at 1037; see also Hussar-Nelson v. Barnhart, 2002 WL 31664488 *3 (N.D.Ill. 2002) (agreeing with plaintiff that great risk of loss exists at district court level because substantial evidence standard of review governs rather than *de novo* standard, and that risk of loss also is greater in Social Security cases because there are no settlements). As the district court in Dodson eloquently explained:

> . . . Social Security claimants, by nature of their disabilities, are generally not able to secure representation via advance payment for services. Contingent-

ORDER - 7

fee agreements are the method of rewarding attorneys for representing claimants without guarantee of payment. As the *Gisbrecht* Court noted, the Social Security Administration itself concluded in 1988 that it could "identify no more effective means of ensuring claimant access to attorney representation." 122 S.Ct. at 1827 (citing Dept. of Health and Human Services, Social Security Administration, Office of Hearings and Appeals, Report to Congress: Attorney Fees under Title II of the Social Security Act at 25 (July 1988)). A contingent-fee system rests on the theory of expected value: a projected award of fees discounted by the probability of obtaining an award. When the attorney is successful, he or she must be able to collect fees that exceed what one might consider a reasonable hourly rate in order to compensate the attorney for unpaid time spent in cases that ended unsuccessfully. An attorney that can collect only a lodestar[4] amount when he wins a Social Security benefits case and absolutely nothing when he loses a benefits case is an attorney likely to forego representing Social Security claimants altogether.

2002 WL 31927589 at *2; see also Brown, 270 F.Supp.2d at 773 (finding because contingent fee agreement was involved, risk claimant's counsel had to bear that he would not win award for his client, and thus not be paid at all, must be taken into account).

---

[4] The "lodestar" method – the usual method for determining attorney's fees in non-contingent fee cases – consists of "determining a reasonable hourly rate for the services performed and multiplying it by the number of attorney hours spent on the case." Claypool, 294 F.Supp.2d at 834. As discussed above, the Supreme Court has held that while the district court "may require the claimant's attorney to submit . . . a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases," it may do so only "as an aid to the court's assessment of the reasonableness of the fee yielded by the [contingent] fee agreement." Gisbrecht, 535 U.S. at 808. Thus, the lodestar method cannot be the starting point for the reasonableness determination. As noted by the Ninth Circuit, "the negative policy implications of allowing the lodestar methodology to drive [Social Security disability] fee awards" counsel against reliance on that methodology in these cases:

> As history demonstrates, Congress and the Supreme Court have considered [the]se negative policy implications . . . Given the prevalence of lodestar calculations in the [non-contingent] fee-shifting context, district courts are familiar with the normal lodestar rules. These include the "strong presumption" that the lodestar is the reasonable fee, *see City of Burlington v. Bogue*, 505, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), and the rule forbidding contingency enhancements to compensate for the risk of non-payment in fee shifting cases. *See id.* at 566-67, 112 S.Ct. 2638. These rules should not apply where the fee is paid by the client under the agreement negotiated between the parties. The lodestar method under-compensates attorneys for the risk they assume in representing [Social Security disability] claimants and ordinarily produces remarkably smaller fees than would be produced by starting with the contingent-fee agreement. A district court's use of the lodestar to determine a reasonable fee thus ultimately works to the disadvantage of [Social Security disability] claimants who need counsel to recover any past-due benefits at all.

Crawford, 586 F.3d at 1149; see also Mizell, 2008 WL 536168 at *5 ("[T]he Supreme Court has rejected an hourly approach ('lodestar method') for determining the reasonableness of a contingency fee arrangement, noting that the lodestar method is inappropriate because it is 'designed to govern imposition of fees on the losing party.'") (quoting Gisbrecht, 535 U.S. at 805).

ORDER - 8

Other factors bearing on the determination as to whether a reduction in the attorney's fees requested is warranted, include "the quality or efficiency of counsel's representation before" the district court, "evidence of fraud or overreaching" in the contingent fee agreement, whether "the requested fees . . . were significantly lower than the fees bargained for" in the fee agreement, whether the "past due benefits . . . recovered" are "large in comparison to the amount of time spent on the case by" claimant's counsel (such that a fee award "would constitute a windfall"), and – in regard to this last factor – whether claimant's "counsel voluntarily evaluated the fees in comparison to the amount of time spent on the case" and "reduced those fees substantially from the allowable 25%." Crawford, 586 F.3d at 1151-52; Jimenez v. Astrue, 2008 WL 2684619 *2 (C.D.Cal. 2008); Ellick, 445 F.Supp.2d at 1172; Brown, 270 F.Supp.2d at 772.

District courts also have considered whether "the issues briefed" were novel or complex, whether the fee is "near the allowable 25 percent" regardless of any voluntary reduction in the amount requested, and whether counsel "is experienced in the field." Ellick, 445 F.Supp.2d at 1173; Claypool, 294 F.Supp.2d at 834; Brown, 270 F.Supp.2d at 772; Hearn, 262 F.Supp.2d at 1037 (noting counsel, who had earned reputation for expertise in area of Social Security law over period of more than 26 years, did not seek maximum allowable fee of 25%); Dodson, 2002 WL 31927589 at *2 (noting counsel requested less than half of maximum statutory amount, which was less than half of fee amount counsel theoretically could claim under terms of fee agreement). In addition, at least one district court has recognized as support for "a substantial fee," the fact that counsel "spent significant time" in administrative proceedings, even though, as noted above, that time "cannot be compensated" federal court. Brown, 270 F.Supp.2d at 773.

Another factor is whether "any novel legal issues or arguments [were] presented" or other legal or factual obstacles had "to the enhancement of the benefits awarded" had to be overcome,

ORDER - 9

"which would justify a maximum award." Mizell, 2008 WL 5366168 at *5 (noting further that counsel represented plaintiff for nine years and as such assumed significant risk of non-recovery for her efforts, and therefore that time spent in court would not be viewed in isolation); Hearn, 262 F.Supp.2d at 1036-37 (finding substantial risk of loss jeopardized counsel's case from start, in that (a) claimant alleged variety of ailments, many of which were not susceptible to clear and straightforward forms of proof, and some of which involved lengthy and complicated medical histories, and (b) claimant's disability claim already had been denied in whole or in part at several levels of administrative review); Hussar-Nelson, 2002 WL 31664488 at *2 (noting total amount of time counsel spent on claimant's case was substantial, requiring counsel to represent claimant at two administrative hearings, on administrative appeal therefrom and in federal court, and requiring counsel to do extensive brief writing at federal level).

Lastly, some courts have considered important the fact that the claimant had "submitted a declaration stating" he or she concurred "with the fee request," and requesting the district court to "approve it in its entirety." Hearn, 262 F.Supp.2d at 1038; Mizell, 2008 WL 536168 at *5 (finding noteworthy fact that claimant had executed affidavit, averring that he was very pleased with results counsel achieved for him, that he was aware of her fee request, that he believed that request to be fair, and that he was fully in support of that request). Nevertheless, as noted by the district court in Ellick, courts have not been exactly "uniform in their approach" in applying the above factors or Gisbrecht in general. 445 F.Supp.2d at 1172. After considering those factors, however, and the language of section 406(b) and the decisions of the Supreme Court and Ninth Circuit in Gisbrecht and Crawford respectively, the undersigned finds that although plaintiff's counsel is entitled to a substantial fee for his successful representation of plaintiff, that fee should be reduced to the amount and for the reasons set forth below.

ORDER - 10

Plaintiff's attorney argues he is entitled to the full 25% award. As support for his request, plaintiff's attorney notes that he spent 65.3 hours representing plaintiff over a six-year period, of which, as indicated above, 11.55 were spent representing her before this Court.[5] He states that no delays occurred at any step in the proceedings in this case, that he has practiced as an attorney since 1977 – during which he has represented many Social Security disability claimants at every administrative level, as well as before both the federal district court and Ninth Circuit – and that he has a 95% success rate for his clients in relation to a typical case load of 129 Social Security disability clients at any one time. Plaintiff's attorney also has submitted a statement showing the hours he spent representing plaintiff. In addition, plaintiff's attorney states he charges an hourly rate of $250.00 in non-contingent fee cases.

There is no dispute in this case that plaintiff's attorney achieved favorable results for his client. Nor is there evidence before the Court that the representation plaintiff's attorney provided was in any way substandard – indeed, plaintiff has achieved a significant amount of success in representing clients in regard to their Social Security applications for well over three decades – or that plaintiff's attorney has engaged in any dilatory tactics in this matter or in any fraud or overreaching in regard to the fee agreement itself. It also is noteworthy that plaintiff's attorney provided representation to his client for a period of some six years, and, as noted above, was able to overcome at least three adverse administrative decisions, ultimately prevailing in terms of obtaining both significant past-due and continuing benefits on his client's behalf on stipulated remand from this Court. These factors all tend to support granting a substantial award under the terms of the contingent fee agreement.

---

[5] Plaintiff's attorney also estimates another two hours would be spent on the 406(b) issue.

ORDER - 11

Other factors, though, counsel against an award of the full amount requested. Remand of this matter, for example, was achieved prior to the full completion of briefing before this Court, though the undersigned does recognize the work that went into crafting the opening brief filed by plaintiff's counsel. Nor does this matter appear to have involved particularly complex or novel factual or legal issues (see Dkt. #17), and the administrative record itself was not overly long as far as such records go (see Dkt. #12), even recognizing the difficulty inherent in establishing disability in regard to a remote onset date of disability based on out of state medical records. In addition, while also acknowledging the number of years spent representing plaintiff with respect to her disability application, the undersigned notes that the amount of attorney's fees requested ($15,767.00) in comparison with the number of hours spent before the Court (11.55) are large (for an hourly rate of $1,371.04), even when the additional estimated two hours spent arguing the attorney's fees issue is considered ($1,163.62).

Plaintiff's attorney argues the full 25% being requested is reasonable in light of the fact that had the application for supplemental security income ("SSI") benefits plaintiff filed at the time she filed her application for disability insurance benefits not been granted, the amount of the past-due benefits she received would have been much higher. But it appears the application for SSI benefits was granted almost one and a half years prior to the date plaintiff's counsel began representing her in this matter. See (Dkt. #27, pp. 1-2). As such, those benefits cannot be used to determine the reasonableness of the fee being requested by plaintiff's attorney, as no work on his part was required in order to obtain them.

Plaintiff's attorney also argues that when all the hours he spent on plaintiff's claim during the six years he represented her are taken into account, the resulting effective hourly rate is only $241.45 per hour. But, as noted above, attorney's fees sought pursuant to section 406(b) may be

ORDER - 12

awarded only for time spent representing a claimant before the district court, even though, also as noted above, the fact that significant time was spent doing so at the administrative level may be considered in general in determining the overall reasonableness of the fee request. That is, fees awarded under section 406(b) cannot actually be paid for work done before the agency on the claimant's behalf. See Brown, 270 F.Supp.2d at 772 (noting that because fees for services rendered before agency cannot be awarded pursuant to § 406(b), only hours spent in connection with court proceedings may be considered).[6]

The Court further notes that the attorney's fee request is for the maximum amount of 25% allowed under the Act, and that there is no affidavit in the record from plaintiff herself indicating concurrence with or approval of that amount. While these last two factors certainly are not dispositive of the matter, they are as noted above important considerations, especially in light of the amount of attorney's fees requested in relation to the time expended. As such, the Court finds a reduction in the attorney's fee request is warranted here. That being said, as one district court has aptly observed, Gisbrecht "does not instruct precisely how a district court should quantify the 'downward adjustment' when" it is determined that such adjustment is "in order." Ellick, 445 F.Supp.2d at 1168.

The Supreme Court has left it to the discretion of the district courts to determine what a reasonable attorney's fee in a particular case should be. See Gisbrecht, 535 U.S. at 808 ("Judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review."). Thus, while it does appear that a district court has considerable

---

[6] But see Ellick, 445 F.Supp.2d at 1169-70 and n.6 (finding three district court decisions in which *de facto* hourly rate was calculated based on time counsel spent before court combined with time counsel spent in administrative proceedings) (citing Henshaw v. Barnhart, 317 F.Supp.2d 657, 662 (W.D.Va. 2004); Bartrom v. Barnhart, 2003 WL 21919181 *3 (N.D.Ind. 2003); Thompson v. Barnhart, 240 F.Supp.2d 562, 565 (W.D.Va. 2003).

ORDER - 13

discretion in this area, it "must provide 'a concise but clear explanation of its reasons for the fee award.'" Crawford, 586 F.3d at 1152 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). Although the Court has set forth its reasons for why a reduction in the amount plaintiff's counsel is requesting here is proper, the size thereof still must be quantified.

As once more aptly observed by the district court in Ellick, the concern that Gisbrecht did "'nothing whatever to subject [section 406(b)] fees to anything approximating a uniform rule of law[,]' . . . may have been well-founded." Ellick, 445 F.Supp.2d at 1168 (quoting 535 U.S. at 809 (Scalia, J., dissenting)). An extensive survey of the case law applying Gisbrecht by that district court at the time revealed "43 reported decisions," among which there was "considerable divergence and scant evidence of any 'uniform rule of law.'" Ellick, 445 F.Supp.2d at 1168. The district court continued in relevant part:

> Slightly more than half, or 23, of the reported decisions . . . have awarded attorney fees in the amount of the requested 25 percent of past-due benefits. The stated justifications for these awards vary widely. For example, five of the decisions generally defer to the fee agreement, apparently without considering whether the benefits obtained were large in comparison to the time counsel spent representing the claimant. Four decisions mention the size of the recovery in comparison to the time spent, but nonetheless deem the contingency fee "reasonable" because of the supposed difficulties in representing the claimants and/or the exceptional results obtained.
>
> Each of the remaining 14 decisions awarding 25 percent of past-due benefits approves the fee request based at least in part on a finding that the *de facto* hourly rate for counsel's time was "reasonable." Eleven of these 14 decisions calculate the *de facto* hourly rated based only on the time counsel spent before the court. Three of these decisions calculate the *de facto* hourly rate based on the time counsel spent before the court combined with the time counsel spent before the agency.
>
> . . .
>
> Eight of the reported decisions . . . have awarded the full amount requested, when the amount happened to be less than 25 percent of the claimant's past-due benefits. In seven of these decisions, the court appears to have considered

ORDER - 14

> the amount of time spent in relation to the benefits obtained. In the remaining case, the court emphasized the fact that the fee was not disputed.
>
> . . .
>
> The remaining 12 reported decisions . . . have awarded fees in amounts greater than the amounts that would have been recovered under counsel's standard hourly rates, but less than the requested 25 percent of past-due benefits. These decisions vary significantly in the manner in which the decisions reduce the fees:
>
> - Two decisions reduce the fees to a *de facto* hourly rate 2.5 times counsel's normal hourly rate.
>
> - Three decisions reduce the fees based on amounts the judge previously had adjudicated to be reasonable in other cases or had experienced in practice and on the bench.
>
> - Five decisions reduce the fees markedly, but without any precise explanation regarding how the court calculated the reduction.
>
> - One decision excludes fees attributable to paralegal time.
>
> - One decision excludes fees for past-due benefits covered for the claimant's minor children.

Id. at 1168-71 (internal footnotes and citations omitted); see also Jimenez, 2008 WL 2684619 at *1-*3 (finding *de facto* hourly rates of $826.98 for attorney services and $366.95 for paralegal services reasonable, where total fees request amounted to less than 12.5% of past due benefits award); Mizell, 2008 WL 536168 at * (awarding full 25% of past due benefits despite limited number of hours spent before district court, based not only on size of both past due and future benefits obtained, experience and reputation of counsel, length of time representing claimant, risk of loss assumed, legal and factual obstacles counsel had to overcome, but also on fact that claimant executed affidavit in support of amount of fee request).

In Ellick, the district court found the "favorable result" the plaintiff's counsel achieved for the plaintiff should result in compensation above the "normal hourly fees to recognize the

ORDER - 15

risks of contingent litigation" the plaintiff's counsel bore, and the past-due benefits the plaintiff recovered were "large in comparison to the amount of time spent on the case by" the plaintiff's counsel, which would have resulted in "a fee equivalent to roughly 4.24 times her normal hourly rates" if "the full 25 percent under the fee agreement" were to be received. 445 F.Supp.2d at 1172. Given this, and the lack of novel or complex issues involved in the case, the district court found "a downward adjustment . . . representing 2.5 times the normal hourly rates of counsel" was "a reasonable fee for the representation" provided the plaintiff in regard to the proceedings before it. Id. at 1173.

In this case, the full 25% requested amount of $15,767.00 for 13.55 hours of work would result in a fee equivalent to 4.65 times counsel's normal hourly rate for non-contingent fee cases. Given the discussion above, the undersigned finds that a downward adjustment to $10,000.00, or 2.95 times counsel's normal hourly rate, properly compensates counsel for the contingent nature of his representation of plaintiff in light of the facts this case. The Court does recognize, as did the district court in Ellick, "the regrettable imprecision of [the preceding] analysis." 445 F.Supp.2d at 1173 (noting that its decision was vulnerable to same sort of criticisms it implicitly directed at decisions of other courts, i.e., that it still may provide too little explanation for size of downward adjustment to 2.5 times lodestar figure). "[A]sent further guidance" from Congress or the appellate courts, though, regarding a more precise method for quantifying the reasonableness of a requested fee, the Court finds the above figure to be here.[7]

---

[7] As an additional basis for seeking a reduction in the attorney's fees being requested by plaintiff's counsel under section 406(b), defendant argues that the amount of past-due benefits upon which the calculation of such fees should be reduced by some $1,430.00, based on the requirement set forth in the Social Security regulations that the period of time for which such benefits are determined not include the month during which that determination is made. See 20 C.F.R. § 404.1703. Apparently, the Commissioner did not take this into account when it withheld the $15,767.00 for payment of those fees. Plaintiff argues the Commissioner's interpretation of its own regulations, as represented by the amount it withheld, should be upheld. The Court need resolve this issue, however, since, as just discussed,

ORDER - 16

## CONCLUSION

Based on the foregoing discussion, the request for attorney's fees submitted by plaintiff's counsel pursuant to section 406(b) hereby is reduced to $10,000, or 2.95 times his normal hourly rate for non-contingent fee cases.

DATED this 5th day of March, 2010.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

---

the fee request already has been reduced by far larger amount than the $357.50 by which that request would be reduced if defendant's position were upheld. Accordingly, the undersigned declines to do so.

ORDER - 17